UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DONNA GOODWIN

and

FOODSERVICE EQUIPMENT CO.,

    Plaintiffs,

v.                                                    Civil Action No. 4:06cv26

UNION INSURANCE CO.,

    Defendant.

## ORDER AND OPINION

Currently before the court is defendant Union Insurance Co.'s Motion for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant urges that summary judgment should be granted in its favor with respect to the plaintiffs' declaratory judgment action against it and with respect to its counterclaim against the plaintiffs. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the defendant's motion for summary judgment.

### I. Factual Background

Plaintiff Goodwin was allegedly electrocuted while operating a bar blender at the Omni Hotel in Newport News, Virginia, in 1995. Goodwin filed suit against several defendants,

including plaintiff Foodservice Equipment Co. ("Foodservice"), a restaurant equipment and supply company that allegedly was involved in supplying or servicing the faulty blender. The case was originally filed in the Circuit Court for the City of Newport News, Virginia on August 19, 1997, and Foodservice was served with suit sometime within a year or two of 1997. Foodservice, which had been run by Mrs. Doretha Williams and her late husband Bob, sold off its operations and shut down in 1997, after the death of Mr. Williams. Mrs. Williams has provided uncontradicted deposition testimony that she first learned of the suit upon being served within a year or two of Foodservice's closing down. See Deposition of Doretha Williams, Defendant's Exhibit 2 (hereinafter "Williams Deposition"), at 9-10.

Mrs. Williams further indicated that, upon being served, she told the sheriff that Foodservice was no longer in business, and the sheriff gave her contact information for someone at the Newport News Circuit Court. When she called the number given to her, and explained that Foodservice was no longer in existence, she was told that the court would send the suit papers back, and that she probably would never hear about the case again. See id. at 13-14. At no time did Mrs. Williams or Foodservice notify the defendant of this initial suit.[1] Goodwin took a nonsuit in that lawsuit, but later filed a second suit, on May 15, 2001. As president of Foodservice, Mrs. Williams was served with process in the second suit on May 17, 2001, at which time she contacted an attorney to notify him of the lawsuit.[2] Again, Mrs. Williams did not

---

[1] Foodservice was a named insured under a commercial general liability policy issued by the defendant that was applicable from April 30, 1995 until April 30, 1996.

[2] The attorney contacted by Mrs. Williams, Thomas Norment, had handled Foodservice's corporate legal matters in the past. Mrs. Williams has indicated that Mr. Norment knew that Foodservice had liability insurance. Williams Deposition, at 16. At some point, Mr. Norment assigned the case to an associate of his, John Valdivielso, with whom Mrs. Williams

2

inform the defendant of the filing of the second suit, and the defendant received no notice of the lawsuit until September 18, 2002, more than sixteen months after Mrs. Williams was served, and at least three years after Mrs. Williams first became aware that a lawsuit had been filed by Goodwin.

Upon receiving notice of the lawsuit, the defendant refused to defend Foodservice, citing the provision in the insurance policy that required Foodservice to provide notice "as soon as practicable" of any occurrence or lawsuit that the policy might cover. On October 10, 2003, Goodwin obtained a default judgment against Foodservice in the amount of $3,000,000.00. To date, the judgment has been unfulfilled.

## II. Procedural History

On April 13, 2005, Goodwin filed an action for a declaratory judgment in the Newport News Circuit Court, seeking a ruling that the defendant was required to indemnify Foodservice for the judgment she had received against it. On October 21, 2005, the defendant filed its grounds of defense and a cross-motion for declaratory judgment, to which Goodwin filed an answer. The defendant then removed the case to this court on February 2, 2006, on the basis of diversity jurisdiction.[3] On February 13, the defendant filed a motion seeking to join Foodservice as an involuntary party plaintiff. This court granted the defendant's motion on April 17, 2006

---

communicated on the matter for the next several months. Mrs. Williams has indicated that, in September of 2002, sixteen months after having been served with the second lawsuit, she indicated to Mr. Valdivielso that Foodservice had liability insurance. Williams Deposition, at 36-37.

[3]This case became removable on January 11, 2006, when Goodwin was granted a nonsuit in state court against a non-diverse former defendant. See 28 U.S.C. § 1446(b) (permitting removal within thirty days of the defendant's receipt of paper which first makes the case removable).

and directed that Foodservice be joined as a plaintiff. On October 27, 2006, the defendant filed a motion for default judgment against Foodservice, which to date has made no appearance in the litigation. Goodwin filed a response on November 3, 2006, wherein she urged the court to deny the defendant's motion on the grounds that entry of default judgment against Foodservice created the risk of inconsistent obligations for the defendant. This court, by order dated December 7, 2006, denied the defendant's motion for default judgment.

On January 26, 2007, the defendant filed the instant motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant seeks entry of judgment in its favor on its declaratory judgment counterclaim against Goodwin and Foodservice and on the plaintiffs' action against it. On February 1, 2007, Goodwin filed a response to the defendant's motion, in which she asserted that genuine issues of material fact still existed, and therefore summary judgment was inappropriate. The defendant filed a reply brief on February 8, 2007. Foodservice did not respond to the defendant's motion for summary judgment, and the time in which to respond is now passed. The motion is therefore ripe for consideration.

**III. Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exist no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon

mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the plaintiff to rebut defendant's motion with such evidence will result in summary judgment. "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case." Id. at 323, 325. After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute. To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine. A factual dispute is deemed to be material if it is dispositive of the claim. See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference. Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998).

While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-movant's burden to establish the existence of such an issue. See Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. To survive summary judgment, the non-moving party must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327.

**IV.  Analysis**

The defendant's main contention is that the uncontradicted deposition testimony of Doretha Williams demonstrates that Foodservice breached the terms of its insurance agreement with the defendant by failing to provide notice to the defendant within a reasonable time after learning of (a) the injury upon which Goodwin's initial lawsuit was founded and/or (b) the filing of the second lawsuit. The parties agree on the timeline of events. As Mrs. Williams testified, she did not inform the defendant about the first lawsuit filed against Foodservice by Goodwin, and waited approximately sixteen months before informing the defendant of the second lawsuit.

The insurance policy at issue was issued by the defendant and provided comprehensive business liability coverage for Foodservice from April 30, 1995 until April 30, 1996. It was during that period of time–specifically, on August 20, 1995–that Goodwin's alleged injuries occurred. The specific language cited by the defendant in declining coverage to Foodservice (the "notice requirement") provides:

> E.  LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS
> . . .
> 2.  Duties in the Event of Occurrence, Claim or Suit
> >   a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
> > >   (1) How, when and where the "occurrence" or offense took place;

>    (2) The names and addresses of any injured persons and witnesses; and
>    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
> b. If a claim is made or "suit" is brought against any insured, you must:
>    (1) Immediately record the specifics of the claim or "suit" and the date received; and
>    (2) Notify us as soon as practicable.

Beacon Advantage Policy Declarations, Defendant's Exhibit 1, at 31.

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury', or 'advertising injury' to which this insurance applies are alleged."[4]  Id. at 34-35.  The defendant's first allegation is, therefore, that Foodservice was required to provide prompt notice after Mrs. Williams first learned of Goodwin's alleged injury.  Foodservice's failure to provide notice until at least three years later, argues the defendant, is a breach of a condition precedent to coverage under the policy, thereby justifying the defendant's denial of coverage.  The defendant further claims that Foodservice breached the notice requirement after being served with the second suit and failing to notify the defendant until sixteen months had passed.  The defendant avers that each breach, by itself, would be sufficient to justify its denial of coverage.

The term "as soon as practicable" in the language of an insurance policy has been held in

---

[4] The parties are in agreement that Goodwin's alleged injury constitutes an "occurrence" within the meaning of the insurance policy, and that the filing of the second lawsuit constitutes a "suit."  The defendant acknowledges that the first lawsuit, because of the nonsuit, is not sufficient to trigger the notice requirement.  See North River Ins. Co. v. Gourdine, 205 Va. 57 (1964) (noting that the failure to provide notice of a nonsuited case was not a violation of the policy's notice requirement).  However, the defendant avers that service of the first lawsuit on Foodservice provided notice to Foodservice and Mrs. Williams that an "occurrence" had taken place, thereby triggering the notice requirement.

Virginia to be "reasonable and enforceable." State Farm Mut. Ins. Co. v. Porter, 221 Va. 592, 597 (1980). The Supreme Court of Virginia has held that the question of whether notice has been given "as soon as practicable" is one for the fact-finder "when the facts are disputed or the inferences uncertain, or when there are extenuating circumstances for the delay." State Farm Mut. Auto. Ins. Co. v. Douglas, 207 Va. 265, 268 (1966). Accord State Farm Fire and Cas. Co. v. Scott, 236 Va. 116, 120 (1988) ("Generally, whether notice has been given to the insurer 'as soon as practicable' is an issue to be resolved by a fact finder."). However, "when the facts are undisputed and certain the question becomes one of law for the court." Douglas, 207 Va. at 268. "[T]he question of delayed notice may be decided as a matter of law where reasonable men could not differ as to the inferences to be drawn from the undisputed facts." Atlas Ins. Co. v. Chapman, 888 F.Supp. 742, 745 (E.D. Va. 1995).

      Goodwin's response brief devotes itself largely to the argument that Foodservice vis-a-vis Mrs. Williams was reasonable in its belief that the defendant was not entitled to notice of the lawsuit. Goodwin claims that Mrs. Williams was reasonable in relying on the advice of the sheriff who served her with the initial lawsuit and the clerk at the Newport News Circuit Court who indicated that she probably wouldn't hear anything again on that matter. Further, Goodwin claims that Mrs. Williams was reasonable in relying on her attorneys, Thomas Norment and John Valdivielso, to whom she referred the second lawsuit, and who did not indicate to her that she should provide notice to the defendant until she mentioned her desire that the insurance policy would cover some of her legal bills.

      Goodwin intimates, but does not specifically claim, that Mrs. Williams was unfamiliar with how to run Foodservice, because her husband had been involved in most of the business's

affairs up until his death, after which she sold off Foodservice's assets and closed down the corporation. Goodwin does assert, however, that a genuine issue of material fact exists as to whether Mrs. Williams had the capacity or sophistication to appreciate that she should notify the defendant when she learned of the first lawsuit because she relied upon advice from whomever she spoke to at the Newport News Circuit Court, who informed her that they would simply send the case back. Further, Goodwin argues that a genuine issue of material fact exists as to whether Mrs. Williams acted reasonably in delaying notice of the second suit, because she reasonably relied on her attorneys to handle her legal problem competently. The defendant, however, points to Mrs. Williams's explanation for why she did not provide notice for several years. Her deposition testimony on the subject includes the following pertinent admission:

> And with hindsight, I should have contacted the insurance company immediately. I can't tell you why I didn't do that, you know, other than just stress. I don't know. I contacted my attorney. I was looking at it as a serving on me personally as president of the corporation. And I shouldn't have been looking at it that way.

Williams Deposition, at 10. That testimony relates directly to Foodservice's failure to give prompt notice of the filing of the second lawsuit, but elsewhere in her deposition Mrs. Williams indicates simply that, when served with the first suit, she informed the court that Foodservice was no longer doing business, and was told that the court would send the filing back because they could not effect proper service on a defunct corporation.

In the instant case, Goodwin asks the court to draw from the facts the inference that Mrs. Williams delayed in providing notice to the defendant because she was relying on the advice and wisdom of others–in the first instance, on the advice of the clerk with whom she spoke at the Newport News Circuit Court, and in the second instance, on the expertise of her attorneys, Mr.

9

Norment and Mr. Valdivielso. This the court is unwilling to do, as it is an unreasonable inference, unsupported by the facts. As the defendant has noted, the only excuse proffered by Mrs. Williams in her deposition as to why she delayed in giving notice to her insurance company is that she was looking at the lawsuit in a way that she shouldn't have been: as if she were being sued personally. See Williams Deposition, at 10. Goodwin urges the court to read into Mrs. Williams's testimony that she is blaming both the Newport News Circuit Court and her attorneys at the law firm of Kaufman and Canoles for her failure to give prompt notice. However, nowhere in her deposition does Mrs. Williams cast blame for the delay on anyone but herself. Goodwin's protestations notwithstanding, then, this court finds that Mrs. Williams's unequivocal statements indicate that there is no factual dispute as to her motivations in not providing the defendant with notice of the original occurrence for at least three years and of the second lawsuit for sixteen months. It is clear that Mrs. Williams makes no excuse for Foodservice's failure to provide timely notice, instead candidly admitting that she is without justification.

The assertion, made by Goodwin, that Mrs. Williams was entitled to rely upon the statements of an unidentified individual at the Newport News Circuit Court, and that such advice absolved her of any responsibility to notify the defendant that an injury was being alleged, is unfounded. To begin with, the clerk with whom Mrs. Williams spoke only indicated to her that she would probably never hear about the lawsuit again. The subject of Foodservice's insurance policy, understandably, did not come up during the course of their conversation. Therefore, even had Mrs. Williams asserted this conversation as an excuse for her failure to provide prompt notice, it still would be objectively unreasonable to believe that the conversation absolved Mrs. Williams of responsibility to satisfy the insurance policy's notice provision.

10

That Mrs. Williams was entitled to rely upon the skill and expertise of her attorneys upon giving them the second suit papers is also incorrect, and might possibly be moot. At the time Mrs. Williams was served with Goodwin's second lawsuit, it had already been some two years after she first learned of the occurrence which gave rise to the suit. Therefore, had Mrs. Williams's attorneys immediately notified the defendant of the lawsuit against Foodservice when they were notified, it would seem that the notice provision would have already been breached. Regardless, it is clear that a litigant must assume the risk of neglect or incompetence of counsel, and is ordinarily not entitled to special treatment simply because her attorney may have mishandled a matter. See, e.g., Carpenter v. Ingram, 152 Va. 27, 36 (1929).

Thus, the court is left with the determination of whether the notice provided to the defendant by Foodservice was timely as a matter of law. As this court has previously noted, Virginia law makes compliance with a notice requirement in an insurance policy a condition precedent to coverage. Atlas Ins. Co. v. Chapman, 888 F.Supp. 742, 745 (E.D. Va. 1995).

> The rationale behind the rule requiring compliance with the notice provision is compelling. Absent the requirement of prompt notice by the insured of all accidents and occurrences which could implicate the policy, the insurer is at the mercy of its insured's willingness to reveal such potential claims. As the Virginia Supreme Court has made plain, notice provisions are designed to afford the insurer the opportunity to make a timely investigation of all circumstances surrounding the accident and to prepare an adequate defense is necessary on behalf of the insured.

Id. The Virginia Supreme Court has held that an insurer need not show actual prejudice resulting from a breach of the notice requirement where the violation is substantial and material. Lord v. State Farm Mut. Auto. Ins. Co., 224 Va. 283, 287 (1982).

This court has applied a three-factor test to determine whether a violation is material. Penn-America Ins. Co. v. Mapp, 461 F.Supp.2d 442, 452 (E.D. Va. 2006) (citing North River

Ins. Co. v. Gourdine, 205 Va. 57 (1964)). The factors to be considered are: (1) the reasonableness of the delay; (2) the amount of prejudice suffered by the insurer because of the delay; and (3) the length of time before notice was given. Id. In the instant case, Mrs. Williams's explanation of the delay indicates that it was objectively unreasonable. Further, the delay was significant: more than three years since Foodservice was aware of the occurrence, and more than sixteen months since the second lawsuit was filed. Although the defendant has not asserted that it was prejudiced by the delay, it is clear that the combination of factors demonstrates that Foodservice's breach of the notice requirement was material. The sheer lapse of time establishes that the delay was substantial. Therefore, the defendant need not prove actual prejudice resulting from the violation. Contra id. at 454-55 (finding that notice given two years after occurrence was not material violation, because of insured's belief that it was not liable for occurrence and because insured gave notice to insurer two days after being served with lawsuit).

Virginia courts apply an objective standard in determining whether a notice provision has been breached. See Dan River, Inc. v. Commercial Union Ins. Co., 227 Va. 485 (1984). In Dan River, the Virginia Supreme Court held clearly:

> Failure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated. Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved.

Id. at 489. Although Goodwin would have the court hold otherwise, the subjective belief of Mrs. Williams is not controlling. Instead, the court must determine whether the occurrence "'was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy.'" State Farm Fire and Cas. Co. v.

Walton, 244 Va. 498, 504 (1992) (quoting BLACK'S LAW DICTIONARY 1080 (6th ed. 1990)). There is no question that Mrs. Williams should have contacted the defendant, both upon learning of the occurrence when she was served with the first lawsuit and upon being served with the second lawsuit. She has admitted this herself, stating "[i]n hindsight, I should have contacted the insurance company immediately." Williams Deposition, at 10. Goodwin's argument, that Mrs. Williams lacked the capacity to appreciate that she should have forwarded the suit papers to the defendant sooner, is directly contradicted by Mrs. Williams's own testimony. Further, Goodwin's assertion is, in essence, an attempt to convert the standard of review into a subjective one.[5] "[A]n insured's subjective opinion that an accident will not precipitate a claim under the policy is irrelevant to the question of whether notice should be provided." Atlas Ins. Co. v. Chapman, 888 F.Supp. 742, 745 (E.D. Va. 1995). Further, although in reality Foodservice was controlled by Mrs. Williams, the question before the court is whether Foodservice, the corporation, acted reasonably. That a particular course of action may not have occurred to the owner of a company "may have had some plausibility if offered by an unsophisticated private individual. But [the defendant] is a business enterprise, presumably familiar with standard contract provisions like the one at issue in this case." Atlas Ins. Co. v. Chapman, 92 F.3d 1176 (4th Cir. 1996) (unpublished).

---

[5]Goodwin cites the Fourth Circuit decisions of Overstreet v. Kentucky Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991) and Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1997) for the proposition that "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." Overstreet, 950 F.2d at 937. However, an examination of "states of mind" is inappropriate where, as here, the standard applied is an objective one. Mrs. Williams's subjective belief–her "state of mind"–is simply not relevant to the determination of whether Foodservice was objectively reasonable in failing to provide notice to the defendant for more than three years.

Even considering Mrs. Williams's–and not Foodservice's–competence, there is no question that Mrs. Williams was competent to understand the notice provisions of the insurance contract that Foodservice had with the defendant. Although Goodwin argues that Mrs. Williams was relatively uninvolved with the day-to-day operations of Foodservice until her husband's prolonged illness and subsequent death, she in fact was proficient enough to serve as its president and conduct the winding up of corporate business after the death of Mr. Williams in 1996. Mrs. Williams has acknowledged that she was "definitely" aware that Foodservice had liability insurance. Williams Deposition, at 31.

Therefore, the delay of more than three years from the date on which Mrs. Williams first became aware of the occurrence, and of sixteen months from when she was served with the second lawsuit, as a matter of law constitutes a substantial and material breach of the notice provision, which is a condition precedent to coverage. This conclusion is in accord with that of several courts applying Virginia law to similar circumstances. See, e.g., Atlas Ins. Co. v. Chapman, 888 F.Supp. 742, 746 (E.D. Va. 1995) (as a matter of law a four month delay in notice to the insurer is a substantial and material breach of the notice requirement); State Farm Fire & Cas. Co. v. Walton, 244 Va. 498 (1992) (as a matter of law a two year delay in notification was substantial and material breach); Dan River, Inc. v. Commercial Union Ins. Co., 227 Va. 485 (1984) (failure to provide notice for seven years after lawsuit was filed against insured constituted breach of notice provision). As such, the defendant need not demonstrate any prejudice from the breach of the notice provision. The excuses proffered by Goodwin in defense of Mrs. Williams's delay are insufficient to create a genuine issue of material fact, such that summary judgment should be denied. Because there is no such issue of fact, and the defendant is

entitled to judgment as a matter of law, summary judgment is appropriate.

In this case, summary judgment extends also to Foodservice, which is a party plaintiff but which has not entered an appearance. Because Foodservice's ostensible claim is premised on the exact same facts and legal assertions as Goodwin's claim, it too cannot withstand summary judgment.[6] Therefore, with respect to Foodservice's and Goodwin's declaratory judgment action against the defendant, the defendant's motion for summary judgment is **GRANTED.** Further, the defendant's motion is **GRANTED** with respect to its counterclaim for declaratory judgment against the two plaintiffs.

### V. Conclusion

Because there exist no genuine issues of material fact upon which a jury could base a ruling in the plaintiffs' favor, and because the defendant is entitled to judgment as a matter of law, the defendant's motion for summary judgment is **GRANTED**. The defendant's request for attorneys' fees is **DENIED.**

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all parties.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

February 20, 2007
Norfolk, Virginia

---

[6]It is noted that Goodwin's rights as an injured third party are not derivative of Foodservice's, and therefore an actual controversy exists as to Goodwin. See, e.g., Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270 (1941).